UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**CDK Global LLC** and **IP Networked Services Inc**.

    Plaintiffs,

v.

**Car Champs LLC**,

    Defendant.

No. 17-cv-_____

# COMPLAINT

1. CDK Global LLC ("**CDK**") and IP Network Services Inc. ("**INS**") leased equipment and provided information technology services to Car Champs LLC ("**Car Champs**") under several master service agreements and associated schedules. After Car Champs stopped paying, CDK and INS made numerous demands for payment and the return of equipment. Because Car Champs did neither, CDK and INS bring this complaint.

## 1. JURISDICTION AND VENUE.

2. CDK Global LLC is a Delaware limited liability company, with its principal place of business at 1950 Hassell Road, Hoffman Estates, Illinois 60169.

3. CDK's sole member is CDK Global Holdings II LLC, a Delaware limited liability company with its principal place of business at 1950 Hassell Road, Hoffman Estates, Illinois 60169.

4. CDK Global Holdings II LLC's sole member is CDK Global Holdings, Inc., a Delaware corporation with its principal place of business at 1950 Hassell Road, Hoffman Estates, Illinois 60169.

5. Accordingly, CDK is a citizen of Delaware and Illinois.

6. IP Networked Services Inc. is a Delaware corporation with its principal place of business at 1950 Hassell Road, Hoffman Estates, Illinois 60169.

7. Accordingly, INS is a citizen of Delaware and Illinois.

8. Car Champs LLC is a California limited liability company. On information and belief, Car Champs's principal place of business is in Irvine, California.

9. Upon information and belief, the manager of Car Champs is Scott A. Kohn.

10. Upon information and belief Kohn is either a citizen of California or Nevada with a principal residence in Irvine, California, or Las Vegas, Nevada.

11. According to the California Secretary of State's public business search database, Car Champs may be a managed by Walter E. Simmons, Jr., a citizen of California with a principal residence in Newport Beach, California.

12. Upon information and belief, Kohn and/or Simmons are the only member or members of Car Champs.

13. At any event, on information and belief, Car Champs is not a citizen of Illinois or Delaware.

14. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 for diversity of citizenship because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. This Court has personal jurisdiction over the parties because Car Champs has consented to jurisdiction in federal court in the State of Illinois and designated the U.S. District Court, Northern District of Illinois as proper venue, by paragraph 17.I. of the Master Services Agreement between CDK and Car Champs signed on December 5, 2014 ("**CDK MSA**").

16. This venue is proper before this Court under 28 U.S.C. §§ 1391(a) and (c).

## 2. CLAIMS FOR RELIEF.

### 2.1. Count 1: breach of CDK's contract.

17. CDK incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 16 as if fully stated here.

18. CDK provides integrated computer operating systems and design, including hardware, software, peripheral, licensing, and maintenance and support for automobile and truck dealerships.

19. CDK and Car Champs entered into the CDK MSA and accompanying schedules for certain services, licenses and/or subleases, software support services, and equipment and maintenance services as set forth in the schedules.

20. Car Champs signed the CDK MSA on December 5, 2014, and CDK signed the CDK MSA on December 15, 2014.

21. The term of the CDK MSA was to commence upon the signing of the CDK MSA by both parties until all schedules had been completely terminated.

22. CDK fully performed its obligations under the CDK MSA.

23. The initial term of each schedule was 60 months as indicated thereon, and was to continue thereafter on a month-to-month basis until terminated by either party on at least 30 days' written notice. CDK had the right to terminate any schedule at any time during the initial term.

24. The CDK MSA provided in Paragraph 16, titled "Default by Client; Remedies Upon Default," the provisions for a default by Car Champs.

25. Paragraph 16.A of the CDK MSA states that if Car Champs:

> (i) fail to pay when due any sum of money due hereunder or pursuant to any of the Schedules hereof, (ii) default in the performance of any of its other obligations under this Agreement or any of the Schedules hereto, (iii) default in the performance of any of its obligations under any agreement with any affiliate of CDK …, then, in any such event, CDK, at its option, may, upon written notice thereof, (A) terminate this Agreement and/or any or all of the Schedules hereto, (B) declare all amounts due and to

>become due under this Agreement (including in particular, Paragraph 16.B. below) and/or any or all of the Schedules hereto immediately due and payable, (C) whether or not this Agreement or a Schedule is terminated, render any Services or portions thereof inoperable and/or inaccessible to Client, and/or take immediate possession of any or all of the Software and items of Equipment not fully paid for, wherever situated, and for such purposes enter upon any premises without liability for so doing, and (D) sell, dispose of, hold, use or lease any items of Equipment not fully paid for, as CDK, in its sole discretion, may decide. Client agrees to reimburse CDK for any and all expenses CDK may incur, including reasonable attorney's fees, in taking any of the foregoing actions. The remedies contained in this Paragraph 16.A. are cumulative and are in addition to all other rights and remedies available to CDK under this Agreement, by operation of law or otherwise.

26. Car Champs specifically acknowledges and agrees in Paragraph 16.B of the CDK MSA that if Car Champs terminates the CDK MSA or if CDK terminates the CDK MSA because of a default, CDK is entitled to recover agreed upon liquidated damages:

>in an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; (ii) the applicable monthly charges for the applicable Services, Software, Equipment, Support Services and Maintenance Services as of the effective time of any such termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in light of the anticipated harm to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy.).

27. Car Champs has breached the CDK MSA and schedules by failing and refusing to make payments in accordance therewith.

28. The CDK MSA also provides that Car Champs is subject to interest charges of 1.5% per month (but in no event more than the highest interest rate

allowed by law), on delinquent payments not paid within ten days after the applicable invoice.

29. The CDK MSA at paragraph 16.A also provides that Car Champs must reimburse CDK for all expenses, including reasonable attorneys' fees, in the event of Car Champs's default.

30. CDK gave Car Champs written notice of its breach of the CDK MSA and schedules in a demand letter dated November 13, 2015.

31. Despite repeated demands, Car Champs has refused to make payments under the CDK MSA.

32. As a direct and proximate result of Car Champs's breach of its contractual obligations, CDK has been damaged.

33. Car Champs has failed to make payments, and the current balance owed, pursuant to the liquidated damages clause, is $187,276.63.

34. In addition, Car Champs owes for unpaid invoices in the amount of $75,343.33.

35. Interest at 1.5% per month for March 24, 2016, to February 24, 2017, amount to $43,332.29. Interest continues to accrue.

36. Due to Car Champs's default, CDK is entitled to recover $305,952.25, and additional accruing interest, and attorneys' fees.

**Wherefore**, Plaintiff CDK demands judgment against Car Champs in the amount of $305,952.25, plus continuing interest, reasonable attorneys' fees and expenses, costs of suit, and such other and further relief as the Court deems just and proper.

### 2.2. Count 2: conversion of CDK's equipment and software.

37. CDK incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 36 as if fully stated here.

38. Pursuant to the CDK MSA, CDK possesses all rights, title, and interests in the equipment and software.

39. Car Champs has knowledge of CDK's rights.

40. By virtue of Car Champs's wrongful possession of the equipment and software, Car Champs has exercised dominion and control over it in a manner inconsistent with CDK's rights. In doing so, Car Champs has converted the equipment and software and has willfully deprived CDK of same.

41. Car Champs has committed these acts intentionally, willfully, wantonly, and maliciously with the knowledge and intent that said acts would benefit Car Champs and cause substantial damage and injury to CDK.

42. CDK demanded the return of CDK's property in its November 13, 2015, demand letter.

43. As a direct result of the wrongful acts by Car Champs, CDK has been damaged.

**Wherefore**, Plaintiff CDK demands judgment against Car Champs for compensatory damages, incidental damages, and punitive damages, plus reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

## 2.3. Count 3: repossession of CDK's equipment and software.

44. CDK incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 43 as if fully stated here.

45. Pursuant to the terms of the CDK MSA, and by virtue of the default by Car Champs and termination of the CDK MSA, CDK is entitled to immediate possession of the equipment and software.

46. Car Champs was notified of its default and CDK's request for the return of all equipment and software in Car Champs's possession.

**Wherefore**, Plaintiff CDK demands judgment against Car Champs awarding CDK immediate repossession of the equipment and software, further ordering and directing Car Champs to immediately release and relinquish possession of said chattels forthwith, and entering a judgment against Car Champs for its attorneys' fees and costs of suit.

### 2.4. Count 4: breach of INS's contracts.

47. INS incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 46 as if fully stated here.

48. INS provides integrated voice-over-IP telephone equipment and service, and maintenance and support for automobile and truck dealerships.

49. INS and Car Champs entered into a Master Services Agreement ("**Norco INS MSA**") and accompanying schedules for certain services, licenses and/or subleases, software support services, equipment and maintenance services, as set forth in the schedules relating to Car Champs's facility at 2000 Hamner Ave. in Norco, CA.

50. Car Champs signed the Norco INS MSA on January 20, 2015, and INS signed the Norco INS MSA on February 3, 2015.

51. The term of the Norco INS MSA was to commence upon the signing of the Norco INS MSA by both parties until all schedules had been completely terminated.

52. INS fully performed its obligations under the Norco INS MSA.

53. The initial term of each schedule was 60 months as indicated thereon, and was to continue thereafter on a month-to-month basis until terminated by either party on at least 30 days' written notice. INS had the right to terminate any schedule at any time during the initial term.

54. The Norco INS MSA provided in Paragraph 14, titled "Default by Client; Remedies Upon Default," the provisions for a default by Car Champs.

55. Paragraph 14.A of the Norco INS MSA states, that Car Champs:

> (i) fail to cure any outstanding payment obligations hereunder or pursuant to the Schedule(s) hereunder, within five (5) working days from the date of written notice of the same from INS; (ii) fail to cure any breach in the performance of any of its other promises or obligations under this Agreement. within thirty (30) days from the date of written notice of the same from INS; or (iii) become the subject of any proceeding under the Bankruptcy Code or any state bankruptcy law, or become insolvent, or have any substantial part of its property

>become subject to any levy, seizure, or assignment, application or sale for or by any creditor or governmental agency (or occurrence of any of the above, a "Default"), then, in any such event, INS, at its option may immediately and without further notice thereof: (a) terminate this Agreement. including without limitation any or all of the Schedule hereunder; (b) declare all amounts due and to become due under this Agreement immediately due and payable; and/or (c) whether or not this Agreement is terminated. render any Services or portions thereof inoperable and/or inaccessible to Client. And/or take immediate possession of an) or all of the Software and/or items of equipment. wherever situated. and for such purposes enter upon an) premises without liability for doing so.

56. Car Champs specifically acknowledges and agrees in Paragraph 14.B of the Norco INS MSA that if Car Champs terminates the Norco INS MSA or if INS terminates the Norco INS MSA because of a default, INS is entitled to recover agreed upon liquidated damages:

>in an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; (ii) the applicable monthly charges for the applicable Services, Software, Equipment, Support Services and Maintenance Services as of the effective time of any such termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in light of the anticipated harm to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy.).

57. Car Champs has breached the Norco INS MSA and schedules by failing and refusing to make payments in accordance therewith.

58. The Norco INS MSA also provides that Car Champs is subject to interest charges of 1.5% per month (but in no event more than the highest interest rate allowed by law), on delinquent payments not paid within ten days after the applicable invoice.

59. INS and Car Champs entered into a Master Services Agreement ("**Bellflower INS MSA**" and collectively with the Norco INS MSA, the "**INS MSAs**") and accompanying schedules for certain services, licenses and/or subleases, software support services, equipment and maintenance services, as set forth in the schedules relating to Car Champs's facility at 9624 E. Artesia Blvd. in Bellflower, CA.

60. Car Champs signed the Bellflower INS MSA on June 15, 2015, and INS signed the Bellflower INS MSA on July 13, 2015.

61. The term of the Bellflower INS MSA was to commence upon the signing of the Bellflower INS MSA by both parties until all schedules had been completely terminated.

62. INS fully performed its obligations under the Bellflower INS MSA.

63. The initial term of each schedule was 60 months as indicated thereon, and was to continue thereafter on a month-to-month basis until terminated by either party on at least 30 days' written notice. INS had the right to terminate any schedule at any time during the initial term.

64. The Bellflower INS MSA provided in Paragraph 14, titled "Default by Client; Remedies Upon Default," the provisions for a default by Car Champs.

65. Paragraph 14.A of the Bellflower INS MSA states, that if Car Champs:

> (i) fail to cure any outstanding payment obligations hereunder or pursuant to the Schedule(s) hereunder, within the (5) working days from the date of written notice of the same from INS; (ii) fail to cure any breach in the performance of any of its other promises or obligations under this Agreement. within thirty (30) days from the date of written notice of the same from INS; or (iii) become the subject of any proceeding under the Bankruptcy Code or any state bankruptcy law, or become insolvent, or have any substantial part of its property become subject to any levy, seizure, or assignment, application or sale for or by any creditor or governmental agency (or occurrence of any of the above, a "Default"), then, in any such event, INS, at its option may

> immediately and without further notice thereof: (a) terminate this Agreement. including without limitation any or all of the Schedule hereunder; (b) declare all amounts due and to become due under this Agreement immediately due and payable; and/or (c) whether or not this Agreement is terminated. render any Services or portions thereof inoperable and/or inaccessible to Client. And/or take immediate possession of an) or all of the Software and/or items of equipment. wherever situated. and for such purposes enter upon an) premises without liability for doing so.

66. Car Champs specifically acknowledges and agrees in Paragraph 14.B of the Bellflower INS MSA that if Car Champs terminates the Bellflower INS MSA or if INS terminates the Bellflower INS MSA because of a default, INS is entitled to recover agreed upon liquidated damages:

> [I]n an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; (ii) the applicable monthly charges for the applicable Services, Software, Equipment, Support Services and Maintenance Services as of the effective time of any such termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in light of the anticipated harm to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy.).

67. Car Champs has breached the Bellflower INS MSA and schedules by failing and refusing to make payments in accordance therewith.

68. The Bellflower INS MSA also provides that Car Champs is subject to interest charges of 1.5% per month (but in no event more than the highest interest rate allowed by law), on delinquent payments not paid within ten days after the applicable invoice.

69. INS gave Car Champs written notice of its breach of the Norco INS MSA and schedules in its November 13, 2015, demand letter.

70. Despite repeated demands, Car Champs has refused to make payments under the INS MSAs.

71. As a direct and proximate result of Car Champs's breach of its contractual obligations, INS has been damaged.

72. Car Champs has failed to make payments, and the current balance owed, pursuant to the liquidated damages clauses, is $46,618.43.

73. In addition, Car Champs owes for unpaid invoices in the amount of $20,422.19.

74. Interest at 1.5% per month for March 24, 2016, to February 24, 2017, amount to $11,061.70.

75. Due to Car Champs's default, INS is entitled to recover $78,102.32, and additional accruing interest.

**Wherefore**, Plaintiff INS demands judgment against Car Champs in the amount of $78,102.32, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

### 2.5. Count 5: conversion of INS's equipment and software.

76. INS incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 75 as if fully stated here.

77. Pursuant to the INS MSAs, INS possesses all rights, title, and interests in the equipment and software.

78. Car Champs has knowledge of INS's rights.

79. By virtue of Car Champs's wrongful possession of the equipment and software, Car Champs has exercised dominion and control over it in a manner inconsistent with INS's rights. In doing so, Car Champs has converted the equipment and software and has willfully deprived INS of same.

80. INS demanded the return of INS's property in its November 13, 2015, demand letter.

81. Car Champs has committed these acts intentionally, willfully, wantonly, and maliciously with the knowledge and intent that said acts would benefit Car Champs and cause substantial damage and injury to INS.

82. As a dpirect result of the wrongful acts by Car Champs, INS has been damaged.

**Wherefore**, Plaintiff INS demands judgment against Car Champs for compensatory damages, incidental damages, and punitive damages, plus reasonable attorneys' fees and expenses, continuing interest, costs of suit, and such other and further relief as the Court deems just and proper.

### 2.6. Count 6: repossession of INS's equipment.

83. INS incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 81 as if fully stated here.

84. Pursuant to the terms of the INS MSAs, and by virtue of the default by Car Champs and termination of the INS MSAs, INS is entitled to immediate possession of the equipment and software.

85. Car Champs was notified of its default and INS's request for the return of all equipment and software in Car Champs's possession.

**Wherefore**, Plaintiff INS demands judgment against Car Champs awarding INS immediate repossession of the equipment and software, further ordering and directing Car Champs to immediately release and relinquish possession of said chattels forthwith, and entering a judgment against Car Champs for its costs of suit.

Dated: April 4, 2017                            Respectfully submitted,

                                                      **CDK Global, LLC**

                                                      By:  /s/ Jeffrey K. Paulsen
                                                      One of Its Attorneys

William J. Factor (6205675)
Jeffrey K. Paulsen (6300528)

Z. James Liu (6313367)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:      (847) 239-7248
Fax:     (847) 574-8233
E-mail: wfactor@wfactorlaw.com
           jpaulsen@wfactorlaw.com
           jliu@wfactorlaw.com